IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHERYL.L. H.,[1]        )
                        )
        Plaintiff,      )
                        )
vs.                     )   Civil No. 19-cv-997-RJD[2]
                        )
COMMISSIONER OF SOCIAL SECURITY,  )
                        )
        Defendant.      )
                        )

## MEMORANDUM and ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB and SSI in February 2015, alleging a disability onset date of November 1, 2009. After holding an evidentiary hearing, an ALJ denied the application on January 26, 2018. (Tr. 141-152). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 10, 19.

1

1. Plaintiff "amends" her alleged onset date to October 16, 2013.

2. The ALJ's assessment of her subjective allegations was erroneous.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

conclusive. . . ." 42 U.S.C. § 405(g).  Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

The ALJ followed the five-step analytical framework described above.  He determined that plaintiff had not worked at the level of substantial gainful activity since the original alleged onset date.  She was insured for DIB through December 31, 2015, which is relevant only to the claim for DIB.  The ALJ found that plaintiff had severe impairments of osteoarthritis, muscle spasms and tremors, and degenerative changes of the lumbar spine.

The ALJ found that plaintiff had the RFC to do a full range of work at the light exertional level.  Based on the testimony of a vocational expert, the ALJ found that plaintiff was able to do her past relevant work as a newspaper carrier, daycare worker, and cashier.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to the points raised by

plaintiff.

   1.   **Agency Forms**

Plaintiff was born in 1960 and was 57 years old on the date of the ALJ's decision. (Tr. 346). She said she was disabled because of several problems including neuropathy, "muscle spasms in entire body," osteoarthritis, and essential tremors. She was 5' 4" feet tall and weighed 200 pounds. She said she stopped working in February 2014 because of her condition. Her last job was delivering newspapers. (Tr. 350-352).

In April 2015, plaintiff reported that she could not work because she was unable to sit, stand, or walk for very long and her pain made it hard to concentrate or focus. (Tr. 360).

   2.   **Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing in November 2017. (Tr. 158).

Plaintiff lived with her husband, two adult daughters, and four grandchildren. She tried to do some household chores, but she could only do a little at a time. She could start cooking a meal, but another family member would have to take over and complete it. She could lift and carry a gallon of milk. She spent her time watching TV, talking to the kids, and "moseying around through the house." (Tr. 170-175).

Plaintiff testified that she had muscle spasms in her abdominal area, legs, arms, face, throat, and back. She had spasms every day, but not always in the same place. They lasted for a few minutes, but she was then "extremely exhausted" for the rest of the day. She had tried muscle relaxers, but they did not help. She also had tremors which started in her legs, then occurred in her right arm, and then occurred all over her body. Three or four times a week, the tremors were so bad that she could not stand up. She had migraine headaches which were helped by Gabapentin. (Tr. 175-179).

A vocational expert testified that plaintiff's past work as a newspaper deliverer was light

4

and unskilled, and her past work as a daycare worker and cashier was light and semi-skilled. (Tr. 182-183).

### 3. Relevant Medical Records

Plaintiff began receiving primary health care at Jersey Community Hospital (JCH) Medical Group in November 2006. (Tr. 496). Most of her medical treatment during the relevant time is from providers at that Group. (Tr. 496-767, 774-836, 861-918).

Plaintiff originally alleged she became disabled as of November 1, 2009.

On November 19, 2009, primary care provider Dr. Lyons examined plaintiff and noted abdominal muscle guarding and abdominal tenderness. Other findings were normal. The assessment was obesity, lumbago, chronic pain, and muscle spasm. Dr. Lyons documented that plaintiff asked him to fill out disability paperwork for her. He wrote that he felt this would be "settleing [sic] as we don't even have a DX [diagnosis]." She was losing her insurance and he felt this might be a strategy to get coverage. In any event, he wrote that he did not feel she was disabled. He referred her to a rheumatologist, Dr. Horvath. (Tr. 608-609).

Dr. Horvath saw plaintiff in December 2009 and concluded that she did not have rheumatoid arthritis. She had "chronic mechanic[al] low back pain." Her back pain was to be managed by her primary care provider with conservative measures such as weight loss, physical therapy, and stretching. She also had mild osteoarthritic changes of the hands. (Tr. 697-699).

Plaintiff now alleges she became disabled as of October 16, 2013. On that date, she was seen by Dr. Patel of Washington University Physicians for evaluation of muscle spasms which she had reportedly been having for five years. She reported that the area most involved was the right side of the abdomen, but the upper abdomen, chest, back, lower back, triceps, legs and the tops of her feet were also involved. She also reported a tremor that had been present for twenty years. Physical exam was essentially normal except for a resting tremor in the right arm that improved

5

with purposeful movement and a reported slight decrease in sensation in the left face. Sensation was otherwise intact and muscle strength was full throughout. The assessment was chronic tremor/muscle spasm. The tremor might be benign essential tremor. Before doing additional testing, the doctor wanted to see her medical records as she had already been worked up by specialists in neurology, rheumatology, gastroenterology, and had an MRI and CT scan and lupus testing without discovering the etiology. She was to continue taking Lyrica and Cymbalta, which had been prescribed by her primary care doctor, and would be referred to neurology. An additional note stated "Diffuse cramps/muscle spasms going on for severay [sic] years now, tremors. Tremor R arm at rest, improved with purposeful movements. ?psychogenic component." (Tr. 469-472).

Plaintiff was seen again by doctors from Washington University Physicians in November 2013 and April 2014. At the last visit, she said she stopped taking Lyrica and Cymbalta because she could not afford them, and her muscle spasms had increased. Physical exam was normal except for pain in the right shoulder. The abdomen was nontender, and there was no finding of muscle spasm or tremor. The doctor suspected a rotator cuff tear. She was referred to neurology for evaluation of muscle spasms. There was no further mention of a psychogenic component. (Tr. 473-478). There were no additional records from Washington University Physicians before the ALJ.

Plaintiff continued to be seen at JCH Medical Group. There is a gap in the records between June 2010 and April 2014. (Tr.588-592). Plaintiff was seen as a "new patient" by Dr. Elving-Dial at JCH on April 18, 2014. She complained of muscle spasms, tremors, and pain in her right arm. She said she had constant pain all over her body and muscle spasms everywhere which were visible to her. Physical exam was normal except for right shoulder pain. The doctor did not note muscle spasms or tremor, but she prescribed Lyrica for muscle spasms. (Tr.

6

583-586). Exams were again normal in May, June, and July 2014. (Tr. 575, 559-560, 550-551). In August 2014, exam showed only right lower quadrant abdominal pain and guarding. (Tr. 545). In March 2015, exam showed muscle spasm in the thoracic spine and tenderness in the lumbar spine. (Tr. 525).

In April 2015, an MRI of the lumbar spine showed minimal bilateral neural foraminal stenosis secondary to mild to moderate facet hypertrophy. This was stable as compared to an MRI from 2010. There was no significant disc bulge or canal stenosis. (Tr. 645).

Physical exam was normal in late April, May, and June 2015. (Tr. 519, 787, 781-782, 777). Physical exam was normal in August 2015. Plaintiff complained of suicidal thoughts. The doctor diagnosed depression and prescribed Cymbalta. (Tr. 889-891). Physical exam was normal in December 2015. Her mood was described as calm and there was no mention of depression. She said her aunt took Xanax and it helped her. She was prescribed Xanax (alprazolam) for cramps and spasms. The diagnoses were benign essential hypertension, essential tremor, and muscle spasm. (Tr. 879-882).

In late December 2015, plaintiff told a physician's assistant that she wanted an MRI with contrast because she thought she may have MS. She said she had been trying to get on disability for two years, but, without a diagnosis, had been unsuccessful. Exam was normal. (Tr. 875-878).

Stephen Vincent, Ph.D., performed a consultative psychological exam at the request of the agency in October 2015. He noted that plaintiff was "quite somatically preoccupied" but redirected easily. The diagnostic impressions were mood disorder secondary to general medical conditions with major depressive like features, and anxiety secondary to general medical conditions. (Tr. 838-841).

Plaintiff was seen at JCH Medical Group only once in 2016. She had lost her insurance.

7

(Tr. 873).

Plaintiff was seen by a neurologist, Dr. Sherwood, for evaluation of muscle cramps, tingling, and weakness in March 2016. An MRI of the brain showed white matter disease, which could be related to her history of smoking and hypertension and was "not out of the realm of possibility" for her age of 55. The doctor could not rule out MS based on the MRI but noted that her neurologic exam was not consistent with myelopathic changes. The doctor recommended a lumbar puncture, but noted she had no insurance. Physical exam was normal. Strength was full. There was no muscle atrophy. She was able to heel and toe walk normally. Gait was normal. Sensation was intact. Mental exam was also normal. There was no problem with attention and concentration, and memory was good. (Tr. 925-930).

Plaintiff returned to Dr. Elving-Dial in January 2017. She had gotten insurance. She reported that she had not been taking Lyrica because she could not afford it. Since stopping Lyrica, she had no suicidal thoughts at all. She complained of back pain. Exam was normal except that she had cataracts in both eyes. The doctor prescribed Gabapentin. (Tr. 869-872). The next month, plaintiff told Dr. Elving-Dial that Gabapentin helped 50%. Her cataracts had been removed. Physical exam was normal except for abdominal tenderness in the right lower rib area. The dosage of Gabapentin was increased. (Tr. 862-866). Gabapentin was increased again in April 2017. (Tr. 861).

The transcript contains additional medical records submitted by plaintiff to the Appeals Council after the ALJ denied her claim. (Tr. 20-137). Those records cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. Records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error." *Luna v. Shalala*, 22 F3d 687, 689 (7th Cir. 1994).

## Analysis

Plaintiff's first point is that she "amends" her alleged onset date to October 16, 2013. There is no mechanism by which plaintiff can formally amend her alleged onset date at this stage of the proceedings. Her request to amend is, in effect, an admission that she cannot demonstrate disability prior to October 16, 2013.

Plaintiff's substantive argument is that the ALJ ignored relevant evidence and otherwise erred in finding that her subjective complaints were not supported by the record.

SSR 16-3p supersedes the previous SSR on assessing the reliability of a claimant's subjective statements. SSR 16-3p became effective on March 28, 2016 and is applicable here. 2017 WL 5180304, at *1. The new SSR eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." SSR 16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529. *Ibid*., at *10.

The new SSR does not purport to change the standard for evaluating the claimant's allegations regarding her symptoms. Thus, prior Seventh Circuit precedents continue to apply.

The findings of the ALJ as to the accuracy of the plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

Plaintiff first complains that the ALJ incorrectly stated that "there was no actual diagnosis

made for her complaints." (Tr. 149). She argues that this conflicts with the finding at step two that she had severe impairments of osteoarthritis, muscle spasms and tremors, and degenerative changes of the lumbar spine. Plaintiff fails to read the ALJ's statement in context. The ALJ was discussing plaintiff's complaints of debilitating muscle spasms, chronic pain, and tremors, and he noted that work-up for chronic conditions including rheumatoid arthritis, lupus, and abdominal disorders was negative. The ALJ was accurate in that the medical records reveal no diagnosis of the cause or causes of her complaints.

Plaintiff's main argument is that the ALJ failed to consider somatization or psychogenic overlay. She argues that the evidence supports a finding that plaintiff's pain and limitation are at least partly psychological rather than physical.

Plaintiff cites only two pieces of evidence to support her claim: Dr. Patel's note dated October 16, 2013, and Dr. Vincent's report. This evidence cannot carry the weight that plaintiff places upon it.

Dr. Patel's note stated "Diffuse cramps/muscle spasms going on for severay [sic] years now, tremors. Tremor R arm at rest, improved with purposeful movements. ?psychogenic component." (Tr. 469-472). Dr. Patel was questioning whether there was a psychogenic component, but that question was never answered in the affirmative by Dr. Patel or by any of the other doctors who saw plaintiff. Similarly, while Dr. Vincent stated that plaintiff was "quite somatically preoccupied," he did not diagnose her with any form of somatization disorder.

Somatization disorder is "a fancy name for psychosomatic illness, that is, physical distress of psychological origin." *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004). The plaintiff in *Carradine* was diagnosed with somatization disorder. *Ibid.* Plaintiff states in her brief, "In addition, the ALJ failed to consider that since 2009, physicians have recognized that Plaintiff suffers from somatization or psychogenic overlay which supports Plaintiff's allegations

10

of disabling symptoms, whether physical or mental." (Doc. 18, p. 12). That is a misstatement of the record. Not one of the doctors who evaluated, treated, or examined plaintiff diagnosed her with somatization disorder. That fact distinguishes this case from *Carradine* and makes plaintiff's reliance on *Carradine* misplaced.

Plaintiff is tacitly arguing that the ALJ should have determined for himself that plaintiff suffers from somatization disorder, but that would be beyond the ALJ's expertise and would constitute legal error. "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).

The rest of plaintiff's challenge to the ALJ's assessment of the reliability of her statements is equally unpersuasive.

Plaintiff faults the ALJ for pointing out that her treating doctor wrote in November 2009 that he did not think she was disabled.[4] She argues that Dr. Lyons prescribed medication and referred her to a rheumatologist, demonstrating that he did not simply dismiss her complaints. That is true, but it is also beside the point. The ALJ did not say that Dr. Lyons dismissed her complaints. Plaintiff asked Dr. Lyons to fill out disability paperwork for her; he declined because he did not think she was disabled. The ALJ's statement was accurate.

Plaintiff asserts that the ALJ incorrectly said that she took her aunt's Xanax. The ALJ was referring to an office note that stated, "Aunt takes Xanax and it seems to help her." (Tr. 880). Plaintiff herself admits that "It is unclear whether the Xanax helps the aunt or helps Plaintiff." (Doc. 18, p. 12). Therefore, the ALJ's interpretation of the note was permissible.

According to plaintiff, the ALJ was incorrect in discounting her claim that she failed to seek treatment because of lack of financial resources. He stated that there was no evidence that

---

[4] Plaintiff incorrectly says this note was from May 2019. See, Doc. 18, p. 12.

she tried all avenues to get assistance with the cost of treatment. (Tr. 150). Plaintiff points out that the Washington University Physicians' notes indicate that she was applying for assistance and would schedule a mammogram and colonoscopy when assistance was obtained. However, mammogram and colonoscopy are not at issue here. The ALJ was mainly concerned about plaintiff's failure to follow up on the lumbar puncture recommended by Dr. Sherwood to rule out MS. (Tr. 149). Plaintiff did not have insurance when she was seen by Dr. Sherwood, but it is undisputed that she did not pursue the lumbar puncture after she got back on insurance.

Citing only her own complaints, plaintiff faults the ALJ for saying that her impairments were controlled when she took her medication as prescribed. Again, plaintiff fails to read the ALJ's observation in context. The ALJ's observation followed a lengthy discussion of the medical records, notable mainly for the lack of positive findings on exam. And, the notes indicate that plaintiff acknowledged that Gabapentin helped her symptoms.

Lastly, plaintiff takes issue with the ALJ's statement about side effects. Plaintiff argues that "In an attempt to support the credibility determination, the ALJ found that the treatment notes do not support Plaintiff's testimony that she has side effects from medication." (Doc. 18, p. 13). This is a mischaracterization of the ALJ's statement. He wrote that the medical records do not document that she had "persistent and adverse side effects due to prescribed medication, resulting in significant limitations of functional capacity that were incapable of being controlled by medication adjustments or changes." (Tr. 150). The ALJ was correct. While plaintiff did report some side effects, they did not significantly limit her functional capacity and were addressed by medication changes.

None of plaintiff's complaints about the assessment of her allegations holds water. Her points are largely based on mischaracterizations of the record or of the ALJ's statements. Her attempt to downplay the significance of the many normal exams by claiming a somatization

12

disorder fails for the reasons already discussed. Because the ALJ's conclusion was supported by the evidence and was not "patently wrong;" it must be upheld. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence, which the Court cannot do. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: March 27, 2020.**

s/ *Reona J. Daly*
**REONA J. DALY**
**U.S. MAGISTRATE JUDGE**